UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LESLIE SMITH,

    Plaintiff,

    v.

TEHAMA COUNTY SHERIFF'S DEPARTMENT, et al.,

    Defendants.

No. 2:16-cv-0545 KJN P

ORDER

I. <u>Introduction</u>

    Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Both parties have consented to the jurisdiction of the undersigned. (ECF Nos. 5, 15.)

    Pending before the court is defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 16.) For the reasons stated herein, defendants' motion is granted in part and denied in part.

II. <u>Legal Standard for Motion to Dismiss Brought Pursuant to Federal Rule of Civil Procedure 12(b)(6)</u>

    Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In

1

considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Reiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

III. Plaintiff's Claims

This action proceeds on the first amended complaint against defendants Tehama County and Tehama County Sergeant Gibson. (ECF No. 10).

Plaintiff alleges that on October 23, 2012, he was arrested and taken to the Tehama County Jail. (Id. at 9.) Plaintiff was moved to a six-man cell in January 2013. (Id.) One of the

other inmates in the six-man cell was Jakob Peterson.[1]  (Id.)  On the first day plaintiff arrived at the six-man cell, inmate Peterson threatened to attack plaintiff and cause bodily harm to plaintiff.  (Id.)  After four days, another inmate informed correctional officers of these threats.  (Id.)  As a result, Officer Bline moved plaintiff to another cell.  (Id.)  Officer Bline told plaintiff that she was moving plaintiff because another inmate informed correctional staff that inmate Peterson had been threatening plaintiff, so the move was for plaintiff's safety and protection.  (Id.)

Approximately two weeks later, inmate Peterson was moved into the cell where plaintiff had been relocated.  (Id.)  Inmate Peterson began threatening plaintiff again.  (Id.)  On the second day after inmate Peterson's arrival in plaintiff's cell, the inmates were released to pick up their breakfast trays.  (Id.)  After picking up their trays, the inmates returned to their cells to eat their breakfast.  (Id.)  After plaintiff sat down at the table with his breakfast tray, inmate Peterson told plaintiff to move because he wanted to sit where plaintiff was sitting.  (Id. at 10.)  Plaintiff refused to move.  (Id.)  Inmate Peterson took plaintiff's tray and threw it on to another table.  (Id.)  Plaintiff retrieved the tray and returned to the table where he (plaintiff) had been sitting.  (Id.)  Plaintiff asked inmate Peterson to move.  (Id.)  Inmate Peterson got up and struck plaintiff, knocking him down.  (Id.)  Plaintiff got up and inmate Peterson knocked him down a second time.  (Id.)  Plaintiff tried to talk to inmate Peterson, but inmate Peterson struck plaintiff again.  (Id.)

Plaintiff got up and picked up his breakfast tray.  (Id.)  Plaintiff tried to reason with inmate Peterson, but inmate Peterson threatened plaintiff, stating that "this time, [plaintiff] wouldn't get up."  (Id.)  As inmate Peterson started to stand up, plaintiff defended himself by striking inmate Peterson in the chin with the tray.  (Id.)  This caused a small gash in inmate Peterson's chin.  (Id.)  Plaintiff tried to defend himself with another tray.  (Id.)  Inmate Peterson struck plaintiff again, knocking plaintiff to the floor.  (Id.)  Inmate Peterson dragged plaintiff to the back of the cell by the shower and began kicking plaintiff in the head and ribs.  (Id.)  Inmate Peterson stomped on plaintiff's chest and punched him in the upper body, head and face.  (Id.)  Plaintiff blacked out.

---

[1]  Plaintiff alleges that inmate Peterson is 6'2", 185 pounds and 18 years old.  (Id. at 10.)  Plaintiff is 5'4", 165 pounds and 66 years old.  (Id.)

3

(Id.)

Plaintiff remembered that inmate Peterson invited another inmate to participate in the assault. (Id. at 10-11.) When that inmate refused, inmate Peterson began attacking plaintiff again. (Id. at 11.)

Plaintiff later went to Officer Holte and told him that he needed to be taken to a hospital because he had been attacked. (Id.) Plaintiff was taken to St. Elizabeth Community Hospital. (Id.)

When plaintiff returned to the jail, he told defendant Gibson that he would like to give a statement regarding the assault. (Id.) Defendant Gibson refused to take plaintiff's statement. (Id.) Defendant Gibson told plaintiff that he had taken statements from other inmates who were in the cell during the attack. (Id.) Plaintiff later learned that the attack was reported as "mutual combat," and contained no statements from witnesses or plaintiff. (Id.)

About one week later, plaintiff told defendant Gibson that he wanted to file a formal complaint against inmate Peterson for the attack. (Id.) Defendant Gibson told plaintiff that if he filed a complaint against inmate Peterson, defendant Gibson would file felony assault charges against plaintiff for striking inmate Peterson with the food tray. (Id.) Plaintiff alleges that defendant Gibson told plaintiff that he would be looking at five years if convicted on those charges. (Id.) Plaintiff declined to file the complaint. (Id.)

Plaintiff alleges that defendant Gibson violated his Fifth and Fourteenth Amendment rights by failing to protect him from inmate Peterson. (Id. at 3.) Plaintiff alleges that defendant Gibson approved relocating plaintiff to a new cell after the first round of threats by inmate Peterson. (Id.) Plaintiff alleges that two weeks later, defendant Gibson approved moving inmate Peterson to the cell where plaintiff had been relocated, where inmate Peterson later brutally attacked plaintiff. (Id.) Plaintiff alleges that defendant Gibson approved the transfer of inmate Peterson to plaintiff's cell knowing that inmate Peterson had previously threatened plaintiff with great bodily harm. (Id.)

Plaintiff alleges that defendant Tehama County violated his Fifth and Fourteenth Amendment rights by enacting a uniform policy that contributed to his attack. (Id. at 4.) Plaintiff

alleges that shortly after his confinement at the jail, the Tehama County Sheriff's Department changed its uniform policy so that inmates who were not in protective custody were required to wear solid colors with a different color based on the crimes they were charged with. (Id.) This meant that the color of the uniform informed other inmates what crime the inmate had been charged with. (Id.) Inmates in protective custody wore the same color uniform "representative of their charges except that their uniforms have alternating strips, white and black for sex related crimes." (Id.) Plaintiff goes on to allege that the change in uniform policy "identify's my alleged crimes as sex-related, which lead to the assault on myself," in apparent reference to the assault by inmate Peterson. (Id.)

Plaintiff alleges that based on this uniform policy, all inmates knew if an inmate was in protective custody based on a sex-related criminal charge. (Id.) Plaintiff alleges that this change in policy was a contributing factor to the inmate assaults within the jail, including his own assault. (Id.)

Attached to the first amended complaint is a declaration by plaintiff dated October 17, 2013, in which he describes an incident involving inmate Mat Jones and himself. (Id. at 12.) Plaintiff alleges that on October 17, 2013, inmate Jones reached through the bars and grabbed plaintiff's shirt and struck at plaintiff with his other hand through the bars. (Id.) Plaintiff broke free. (Id.) Inmate Jones told plaintiff that he was going to get plaintiff and hurt him if he got the chance. (Id.) Plaintiff alleges that after dinner, inmate Jones began ranting about how he was going to hurt plaintiff. (Id.) At 6:30 p.m., Correctional Officer Bernard came in to do the count. (Id.) Inmate Jones told Correctional Officer Bernard that she better move him because there was going to be problems and that he would continue until he could hurt plaintiff. (Id.) Correctional Bernard walked away. Later, plaintiff passed by inmate Jones's cell again. (Id.) Inmate Jones threw a liquid that hit plaintiff in the face. (Id. at 13.)

////
////
////
////

5

IV. Motion to Dismiss

    A. Failure to Exhaust Administrative Remedies

Defendants first move to dismiss on grounds that plaintiff failed to exhaust administrative remedies.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under ... [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion under § 1997e(a) is "mandatory." Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)); McKinney v. Carey, 311 F.3d 1198, 1200–01 (9th Cir. 2002). Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones v. Bock, 549 U.S. 199, 204 (2007).

"In a typical PLRA case, a defendant will have to present probative evidence [in a Rule 56 motion for summary judgment] ... that the prisoner has failed to exhaust administrative remedies under § 1997e(a)." Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc). However, "in ... rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." Id. (citing Jones, 549 U.S. at 215–16; Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam) ("[A]ffirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact."); Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007) ("[O]nly in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.")).

Defendants argue that it is clear from the face of plaintiff's amended complaint that he failed to exhaust administrative remedies.

At the outset, the undersigned clarifies plaintiff's claims. First, plaintiff alleges that defendant Gibson failed to protect him from inmate Peterson in January 2013. Second, plaintiff alleges that uniform policy enacted by defendant Tehama County caused him to be attacked by

inmate Peterson. It is unclear whether plaintiff is making a separate claim based on the threats and liquid attack by inmate Jones, described in the declaration attached to the amended complaint.

The undersigned first considers whether plaintiff exhausted his administrative remedies as to his claims against defendant Gibson. In the amended complaint, plaintiff alleges that defendant Gibson threatened to file criminal felony assault charges against plaintiff for assaulting inmate Peterson if plaintiff filed a complaint against inmate Peterson. It is unclear whether a complaint against inmate Peterson would have constituted an administrative grievance raising the claims against defendant Gibson.

A grievance process may be rendered unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S. Ct. 1850, 1860 (2016). In McBride v. Lopez, 807 F.3d 982 (9th Cir. 2015), the Ninth Circuit held that a threat of retaliatory action by a prison official would render a prison grievance system unavailable so as to excuse a prisoner's failure to exhaust administrative remedies if the following conditions are met:

> 1. The threat of retaliation actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and
>
> 2. The threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

Id. at 987.

In the motion to dismiss, defendants argue that defendant Gibson's alleged threat to request the District Attorney to file charges against plaintiff for assaulting inmate Peterson was not an improper retaliation action. Defendants argue that when faced with different versions of the incident, defendant Gibson may have been obligated to report the incident to the District Attorney's Office for investigation and prosecution. Defendants argue that a "threat" to refer an incident for such criminal prosecution is not the type of impediment that would excuse a prisoner's failure to exhaust administrative remedies because it was not an improper act.

7

For the following reasons, the undersigned finds that whether defendant Gibson's alleged threat constituted retaliation is an issue better left for summary judgment. According to plaintiff, inmate Peterson attacked him. Plaintiff alleges that after he struck inmate Peterson with the tray in self-defense, inmate Peterson dragged plaintiff to the back of the cell where the assault continued. Plaintiff alleges that the official report inaccurately described the incident as involving "mutual combat," and that it contained no statements by witnesses. Plaintiff suggests that no witnesses were actually interviewed regarding the incident.

Under the circumstances described above, defendant Gibson's alleged threat to refer plaintiff for prosecution could constitute retaliation. A reasonable inmate could infer that defendant Gibson intended to refer plaintiff for criminal prosecution based on false information, but only if plaintiff filed a complaint. Defendants' argument that defendant Gibson was faced with "different versions" of the incident is not necessarily supported by the allegations contained in the amended complaint. The undersigned finds that the threat of referring false criminal charges for prosecution would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance. Defendants' suggestion that defendant Gibson did plaintiff a favor by not referring him for felony assault charges based on the incident involving inmate Peterson is not entirely supported by the amended complaint.

As discussed above, it is not clear whether filing a complaint against inmate Peterson would have exhausted plaintiff's administrative remedies with respect to his claims against defendant Gibson. Assuming that a complaint against inmate Peterson was distinct from an administrative grievance against defendant Gibson, it is unclear whether the alleged threat made by defendant Gibson to refer plaintiff for criminal prosecution would have deterred plaintiff from filing a grievance. This issue is more appropriately addressed in a summary judgment motion. Accordingly, for the reasons discussed above, defendants' motion to dismiss plaintiff's claims against defendant Gibson on grounds that he failed to exhaust administrative remedies is denied.

Plaintiff's claim regarding the uniform policy appears to be intertwined with his claim against defendant Gibson. If plaintiff was unable to exhaust administrative remedies with respect to his claim against defendant Gibson due to threats of retaliation, then he arguably could not

exhaust his claim regarding the uniform policy. For this reason, defendants' argument that plaintiff failed to exhaust administrative remedies with respect to his claim regarding the uniform policy is also better raised on summary judgment.

Defendants' motion to dismiss contains additional arguments in support of their claim that plaintiff failed to exhaust administrative remedies. Defendants cite the section of the complaint form titled "Administrative Remedies." (ECF No. 10 at 4.) The form asks, "Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?" (Id.) Next to this question, plaintiff marked the "no" box. (Id.) The same section of the form asks, "If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not." (Id.) In response to this inquiry, plaintiff wrote, "This claim is not cognizable in grievance procedures." (Id.)

Defendants contend that by arguing that his claims were not cognizable in the grievance procedures, plaintiff is claiming that he could not obtain money damages. Defendants correctly observe that exhaustion is required even if the remedy sought by the prisoner, such as money damages, is unavailable through the prison's grievance system. Booth v. Churner, 532 U.S. 731, 741 (2001). Defendants also observe that if plaintiff claiming that the Tehama County jail did not have an administrative grievance process, or similar administrative procedures, such a claim is implausible. Defendants argue that the law required the jail to have an administrative grievance process. See Cal. Code Regs. tit. 15, § 1073 (county jails are required to "develop written policies and procedures whereby any inmate may appeal and have resolved grievances relating to any conditions of confinement…").

It is not clear why plaintiff checked the boxes on the complaint form discussed above. The undersigned is reluctant to find that plaintiff failed to exhaust administrative remedies based on his unexplained representations that administrative remedies were not available to him and that his claims were not cognizable in the grievance procedures. In any event, as discussed above, plaintiff may have failed to exhaust his administrative remedies regarding his claims against defendant Gibson and defendant Tehama County based on the alleged threats of retaliation made by defendant Gibson. For these reasons, the undersigned does not find that it is clear from the

9

face of plaintiff's complaint that he failed to exhaust administrative remedies.

As discussed above, it is also not clear whether plaintiff is raising a separate claim regarding the uniform policy based on the alleged threats and liquid assault made by inmate Jones. If plaintiff files a second amended complaint raising this claim, he shall address whether he exhausted administrative remedies as to his claims based on inmate Jones.

B. Failure to State a Claim

1. Fifth Amendment Claims

As discussed above, plaintiff alleges that defendants violated his Fifth Amendment rights. Defendants correctly observe that the Fifth Amendment's Due Process and Equal Protection Clauses apply only to the federal government. See Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008). Accordingly, plaintiff's Fifth Amendment claims are dismissed.

2. Fourteenth Amendment Claim Against Defendant Tehama County

Plaintiff alleges that defendant Tehama County's jail uniform policy violated his Fourteenth Amendment rights by causing him to be harmed by other inmates. Local government entities may be sued directly under Section 1983 when their policies or customs are the moving force behind a constitutional violation. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). To establish liability for governmental entities under Monell, "a plaintiff must prove (1) that [he] possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (quotation marks omitted).

Defendants first argue that the liquid throwing incident involving inmate Jones fails to implicate a violation of plaintiff's Fourteenth Amendment rights. Defendants argue that to state a potentially colorable Fourteenth Amendment claim, plaintiff must allege a sufficiently serious injury. Defendants argue that plaintiff has not demonstrated that the injury he suffered as a result of the liquid assault by inmate Jones constituted a serious injury.

////

While it is not entirely clear whether plaintiff was a pretrial detainee at the time of the alleged deprivations, the undersigned shall assume he was for purposes of this discussion. The specific inquiry with respect to pretrial detainees is whether the prison conditions amount to "punishment" without due process in violation of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 (1979). However, this does not mean that federal courts can, or should, interfere whenever prisoners are inconvenienced or suffer de minimis injuries. See Bell, 441 U.S. at 539 n. 21 (noting that a de minimis level of imposition does not rise to a constitutional violation).

At the outset, the undersigned observes that plaintiff is not only alleging that inmate Jones threw a liquid at him, but also that inmate Jones repeatedly told plaintiff that he was going to get plaintiff and hurt him if he got the chance. It is not clear to the undersigned whether plaintiff is stating a separate Fourteenth Amendment claim based on his allegations involving inmate Jones, as these claims are discussed only in a declaration attached to the amended complaint. For this reason, the claims regarding inmate Jones are dismissed with leave to amend. If plaintiff files a second amended complaint, he must clarify whether he is stating a separate claim based on inmate Jones's conduct. Plaintiff must also clarify whether defendant Jones's conduct was motivated by the at-issue uniform policy. Plaintiff must also identify, if possible, the liquid thrown at him by inmate Jones, and whether plaintiff needed any medical treatment as a result.

Defendants next argue that plaintiff has not pled sufficient facts demonstrating that the uniform policy was the moving force behind inmate Peterson's conduct. Defendants argue that plaintiff alleges that both he and inmate Peterson had the same jail classification and were wearing the same uniform, i.e., they were both charged with sex-related crimes. The undersigned does not agree that this is what plaintiff is claiming.

The undersigned understands plaintiff to be alleging that the uniforms of inmates in the Tehama County jail who were charged with sex crimes, regardless of whether they were housed in general population or protective custody, were different from those inmates not charged with sex crimes. Based on these uniforms, it was clear which inmates were charged with sex crimes. Plaintiff alleges that inmate Peterson assaulted him as a result of his uniform identifying him as

11

being charged with a sex crime. Based on these allegations, it is reasonable to infer that plaintiff is claiming that inmate Peterson was not charged with a sex crime, but instead targeted plaintiff because plaintiff was charged with a sex crime. See Navarro v. Block, 250 F.3d 729, 932 (9th Cir. 2001) (when evaluating a motion to dismiss, all allegations of material fact are accepted as true, "as well as all reasonable inferences to be drawn from them.") Plaintiff has pled sufficient facts from which it may be inferred that the uniform policy was the moving force behind the attack by inmate Peterson. Defendants' motion to dismiss on this ground is denied.

Defendants also argue that plaintiff cannot state a potentially colorable Fourteenth Amendment claim based on the uniform policy. Defendants argue that several courts have recognized that jail policies requiring inmates in protective custody to wear different uniforms enable staff to easily identify and protect them from harm, and therefore serve legitimate governmental objectives. Defendants cite Bank v. Hennessey, 2012 WL 6725890 (N.D. Cal. 2012), where, following summary judgment, the United States District Court for the Northern District of California upheld a jail policy requiring inmates to wear different color uniforms based on whether they were in administrative segregation, an escape risk, allowed outside the building, or civil detainees. 2012 WL 6725890 at *1. In Banks v. Hennessey, plaintiff argued that forcing civil detainees to wear green uniforms identified them as child molesters, i.e., inmates civilly detained pursuant to the Sexually Violent Predators Act ("SVPA"). Id. at 2. The Northern District found that requiring civil detainees to wear green uniforms served a legitimate, non-punitive governmental objective of allowing jail officials to easily identify them. Id. at 4. In addition, there was no evidence that plaintiff had ever been assaulted or injured as a result of his different clothing. Id. It does not appear that the plaintiff in Banks v. Hennessey claimed that he was housed with inmates other than civil detainees.

Defendants also cite Marentez v. Baca, 2012 WL 7018230 (C.D. Cal. 2012), where the plaintiff challenged the jail policy requiring plaintiff and all other inmates housed at the jail pursuant to the SVPA, to wear red uniforms. 2012 WL 7018230 at *5. The United States District Court for the Central District granted the defendants summary judgment, finding that this policy did not violate the Fourteenth Amendment because the purpose of the policy was to maintain the

12

safety and security of all of the jail detainees and inmates. Id. The District Court found that requiring the SVPA inmates to wear red uniforms alerted jail personnel that they were to be kept away from the general population inmates for their safety. Id. It also appears that in Marentez, the plaintiffs did not allege that they had been assaulted or injured as a result of their different clothing.

Defendants also argue that the instant case is distinguishable from another case where the undersigned found that allowing inmates in protective custody to mingle with general population inmates stated a potentially colorable Fourteenth Amendment claim. See Aguirre v. County of Sacramento, 2: 12-cv-2165 TLN KJN P.

Plaintiff's allegations are distinguishable from Banks v. Hennessesy and Marentez v. Baca, where the district courts upheld the at-issue uniform policies. Unlike the inmates in the two cases cited above, plaintiff alleges that he was required to wear a uniform that identified him as having been charged with a sex-related offense, and that he was housed with other inmates who were not charged with sex-related offenses. Plaintiff argues that inmates charged with sex-related offenses were vulnerable to attack by other inmates. Unlike the plaintiffs in Bank v. Hennessey and Marentez v. Baca, plaintiff alleges that he was assaulted as a result of the uniform policy. In addition, in both Bank v. Hennessey and Marentez v. Baca, the district courts found that the uniform policies served legitimate, non-punitive governmental objectives *after* considering evidence in summary judgment motions. Accordingly, defendants' motion to dismiss plaintiff's claim challenging the uniform policy on these grounds is without merit.

Finally, defendants argue that plaintiff's first amended complaint pleads no facts demonstrating that defendant Tehama County was deliberately indifferent to his constitutional rights with respect to the uniform policy. "It is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury." Castro v. County of Los Angeles, 833 F.3d 1060, 1076. "A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [the jail's] inhabitants.'" Id., quoting City of Canton, 489 U.S. 378, 392 (1989). The deliberate indifference standard for municipalities is an objective inquiry. Id. at 1076. "Where a § 1983 plaintiff can establish that

the facts available to [policymakers] put them on actual or *constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights or their citizens, the dictates of Monell are satisfied." Id.

Plaintiff has pled sufficient facts supporting a claim for deliberate indifference. Plaintiff alleges that he was required to wear a uniform identifying him as being charged with a sex crime. Plaintiff alleges that he was threatened by inmate Peterson, and then later attacked by inmate Peterson, as a result of this uniform. From these allegations, it is reasonable to infer that defendant Tehama County had actual or constructive notice that the policy was substantially certain to result in the violation of plaintiff's constitutional rights. Defendants' motion to dismiss on grounds that plaintiff has not pled sufficient facts in support of his claim that defendant Tehama County acted with deliberate indifference is denied.

Conclusion

Defendants' motion to dismiss plaintiff's Fifth Amendment claims against both defendant Gibson and defendant Tehama County is granted. Defendants' motion to dismiss on grounds that plaintiff failed to exhaust administrative remedies is denied. Defendants' motion to dismiss plaintiff's Fourteenth Amendment claim against defendant Tehama County based on the incident involving inmate Peterson is denied.

Defendants' motion to dismiss plaintiff' Fourteenth Amendment claim against defendant Tehama County based on the incident involving inmate Jones is granted. If plaintiff files a second amended complaint, he shall clarify whether he is stating a separate claim regarding the uniform policy based on the alleged assault by inmate Jones. If plaintiff alleges that the assault by inmate Jones occurred as a result of the uniform policy, he shall allege facts in support of such a claim.

Plaintiff is granted thirty days from the date of this order to file a second amended complaint. If plaintiff does not file a second amended complaint, the court will construe plaintiff's election as consent to dismissal of all claims against defendant Tehama County based on the incident involving inmate Jones.

////

14

An amended complaint must be complete in itself without reference to any prior pleading. Local Rule 220; see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files a second amended complaint, the first amended complaint is superseded. In other words, a second amended complaint must include all claims against all defendants.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (ECF No. 16) is granted as to plaintiff's Fifth Amendment claims against both defendants Gibson and Tehama County;

2. Defendants' motion to dismiss on grounds that plaintiff failed to exhaust administrative remedies is denied; defendants' motion to dismiss plaintiff's Fourteenth Amendment claims against defendant Tehama County based on the incident involving inmate Peterson is denied;

3. Defendants' motion to dismiss plaintiff's Fourteenth Amendment claims against defendant Tehama County based on the incident involving inmate Jones is granted with leave to amend; plaintiff is granted thirty days from the date of this order to file a second amended complaint; defendants shall not respond to the second amended complaint until receiving further order from the court; if plaintiff does not file a second amended complaint within that time, defendants shall file a response to the first amended complaint within forty-five days of the date of this order.

Dated: April 17, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Sm545.mtd