UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE SMITH,<br><br>       Plaintiff,<br><br>      v.<br><br>TEHAMA COUNTY SHERIFF'S<br>DEPARTMENT, et al.,<br><br>       Defendants. | No. 2: 16-cv-0545 KJN P<br><br><br>ORDER |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. The parties consented to the jurisdiction of the undersigned.

Pending before the court is defendants' summary judgment motion filed December 22, 2017. (ECF No. 41.) On March 1, 2018, plaintiff filed an opposition. (ECF No. 49.) On March 6, 2018, defendants filed a motion for an extension of time to file a reply to the opposition. (ECF No. 50.) On March 16, 2018, defendants filed a reply. (ECF No. 52.) Good cause appearing, defendants' motion for extension of time is granted nunc pro tunc, and the reply is deemed timely filed.

After carefully considering the record, the undersigned grants defendants' summary judgment motion for the reasons stated herein.

II.  Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on June 27, 2016 (ECF No. 13), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III.  Plaintiff's Claims

This action proceeds on the first amended complaint against defendants Tehama County and Tehama County Sergeant Gibson.  (ECF No. 10.)

Plaintiff alleges that on October 23, 2012, he was arrested and taken to the Tehama County Jail.  (Id. at 9.)  Plaintiff was moved to a six-man cell in January 2013.  (Id.)  One of the other inmates in the six-man cell was Jakob Peterson.[1]  (Id.)  On the first day plaintiff arrived at the six-man cell, inmate Peterson began threatening to attack plaintiff and cause bodily harm to plaintiff.  (Id.)  After four days, inmate Saetern informed correctional officers of these threats by way of an inmate request form.  (Id.)  As a result, Officer Bline moved plaintiff to another cell.  (Id.)  Officer Bline told plaintiff that she was moving plaintiff because another inmate informed correctional staff that inmate Peterson had been threatening plaintiff, so the move was for plaintiff's safety and protection.  (Id.)

Approximately two weeks later, inmate Peterson was moved into the cell where plaintiff had been relocated.  (Id.)  Inmate Peterson began threatening plaintiff again.  (Id.)  On the second day after inmate Peterson's arrival to plaintiff's cell, the inmates were released to pick up their breakfast trays.  (Id.)  After picking up their trays, the inmates returned to their cells to eat their breakfast.  (Id.)  After plaintiff sat down at the table with his breakfast tray, inmate Peterson told plaintiff to move because he wanted to sit where plaintiff was sitting.  (Id. at 10.)  Plaintiff refused to move.  (Id.)  Inmate Peterson took plaintiff's tray and threw it on to another table.  (Id.)  Plaintiff retrieved the tray and returned to the table where he (plaintiff) had been sitting.  (Id.)  Plaintiff asked inmate Peterson to move.  (Id.)  Inmate Peterson got up and struck plaintiff, knocking him down.  (Id.)  Plaintiff got up and inmate Peterson knocked him down a second

---

[1]  Plaintiff alleges that inmate Peterson was 6'2", 185 pounds and 18 years old.  (Id. at 10.) Plaintiff was 5'4", 165 pounds and 66 years old.  (Id.)

time.  (Id.)  Plaintiff tried to talk to inmate Peterson, but inmate Peterson struck plaintiff again.
(Id.)

Plaintiff got up and picked up his breakfast tray.  (Id.)  Plaintiff tried to reason with inmate Peterson, but inmate Peterson threatened plaintiff, stating that "this time, [plaintiff] wouldn't get up."  (Id.)  As inmate Peterson started to get up, plaintiff defended himself by striking inmate Peterson in the chin with the tray.  (Id.)  This caused a small gash in inmate Peterson's chin.  (Id.)  Plaintiff tried to defend himself with another tray.  (Id.)  Inmate Peterson struck plaintiff again, knocking plaintiff to the floor.  (Id.)  Inmate Peterson dragged plaintiff to the back of the cell by the shower and began kicking plaintiff in the head and ribs.  (Id.)  Inmate Peterson stomped on plaintiff's chest and punched him in the upper body, head and face.  (Id.)  Plaintiff blacked out.
(Id.)

Plaintiff remembered that inmate Peterson invited another inmate to participate in the assault.  (Id. at 10-11.)  When that inmate refused, inmate Peterson began attacking plaintiff again.  (Id. at 11.)

Plaintiff later went to Officer Holte, and told him that plaintiff needed to be taken to a hospital because he had been attacked.  (Id.)  Plaintiff was taken to St. Elizabeth Community Hospital.  (Id.)

When plaintiff returned to the jail, he told defendant Gibson that he would like to give a statement regarding the assault.  (Id.)  Defendant Gibson refused to take plaintiff's statement.
(Id.)  Defendant Gibson told plaintiff that he had taken statements from other inmates who were in the cell during the attack.  (Id.)  Plaintiff later learned that the attack was reported as "mutual combat," and contained no statements from witnesses or plaintiff.  (Id.)

About one week later, plaintiff told defendant Gibson that he wanted to file a formal complaint against inmate Peterson for the attack.  (Id.)  Defendant Gibson told plaintiff that if he filed a complaint against inmate Peterson, defendant Gibson would file felony assault charges against plaintiff for striking inmate Peterson with the food tray.  (Id.)  Plaintiff alleges that defendant Gibson told plaintiff that he would be looking at five years if convicted on those charges.  (Id.)  Plaintiff declined to file the complaint.  (Id.)

5

Plaintiff alleges that defendant Gibson violated his Fifth and Fourteenth Amendment rights by failing to protect him from inmate Peterson. (Id. at 3.) Plaintiff alleges that defendant Gibson approved relocating plaintiff to a new cell after the first round of threats by inmate Peterson. (Id.) Plaintiff alleges that two weeks later, defendant Gibson approved moving inmate Peterson to the cell where plaintiff had been relocated, where inmate Peterson later brutally attacked plaintiff. (Id.) Plaintiff alleges that defendant Gibson approved the transfer of inmate Peterson to plaintiff's cell knowing that inmate Peterson had previously threatened plaintiff with great bodily harm. (Id.)

Plaintiff alleges that defendant Tehama County violated his Fifth and Fourteenth Amendment rights by enacting a uniform policy that contributed to his attack. (Id. at 4.) Plaintiff alleges that shortly after his confinement at the jail, the Tehama County Sheriff's Department changed its uniform policy so that inmates who were not in protective custody were required to wear solid colors with a different color based on the crimes with which they were charged. (Id.) This meant that the color of the uniform informed other inmates with what crime the inmate had been charged. (Id.) Inmates in protective custody wore the same color uniform "representative of their charges except that their uniforms have alternating strips, white and black for sex related crimes." (Id.) Plaintiff goes on to allege that the change in uniform policy "identify's my alleged crimes as sex-related, which lead to the assault on myself," in apparent reference to the assault by inmate Peterson. (Id.)

Plaintiff alleges that based on this uniform policy, all inmates knew if an inmate was in protective custody based on a sex-related criminal charge. (Id.) Plaintiff alleges that this change in policy was a contributing factor to the inmate assaults within the jail, including his own assault. (Id.)

IV.  Discussion

At the outset, the undersigned observes that defendants have attached a supplemental declaration by defendant Gibson to their reply to plaintiff's opposition. (ECF No. 52 at 18-19.) Because plaintiff has not had an opportunity to respond to this new evidence, defendant Gibson's supplemental declaration is disregarded. See Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir.

6

1996) (a district court may also consider new evidence submitted in conjunction with a reply to an opposition to a motion for summary judgment where the opposing party has had an opportunity to respond).[2]

Defendants move for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies and as to the merits of his claims against defendants. The undersigned first addresses defendants' motion regarding the merits of plaintiff's claims.

A. Did Defendant Tehama County's Uniform Policy Violate Plaintiff's Constitutional Rights?

*Legal Standard*

A governmental entity may be liable under § 1983 where a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978). To hold a governmental entity liable under Monell, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted; alterations in original).

To establish deliberate indifference for municipal liability, the court applies an objective standard. Castro v. County of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016). "'Where a § 1983 plaintiff can establish that the facts available to [municipal policymakers] put them on actual or constructive notice that the particular omission is substantially certain to result in the

---

[2] In his supplemental declaration, defendant Gibson addresses issues related to evidence submitted in support of plaintiff's opposition regarding his legal status at the time of the January 19, 2013 incident. (ECF No. 52 at 18-19.) The undersigned need not consider defendant Gibson's statements regarding this issue in order to resolve the pending summary judgment motion. Defendant Gibson also addresses plaintiff's objections to defendants' exhibits containing jail incident reports. (Id. at 19.) The undersigned did not rely on the incident reports in resolving the pending summary judgment motion. Accordingly, the undersigned need not consider defendant Gibson's statements regarding those exhibits.

violation of the constitutional rights of their citizens, the dictates of <u>Monell</u> are satisfied.'" <u>Id.</u> (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 396 (1989).)

*Analysis*

As discussed above, plaintiff alleges that defendant Tehama County had a policy that required inmates charged with sex offenses to wear uniforms identifying them as sex offenders. Plaintiff alleges that because he was charged with a sex offense, he wore one of these uniforms. Plaintiff alleges that inmate Peterson knew he was a sex offender based on the uniform, and attacked plaintiff based on this knowledge.

Defendants do not dispute that plaintiff and inmate Peterson were involved in a physical altercation on January 19, 2013. Defendants move for summary judgment as to this claim on the following grounds: 1) the inmate uniform policy was not the "moving force" behind the incident between plaintiff and inmate Peterson; 2) defendant Tehama County was not deliberately indifferent to plaintiff's constitutional rights when it applied the inmate uniform policy; and 3) plaintiff was not deprived of a constitutional right.

As observed by defendants in the reply, plaintiff's opposition does not address their arguments regarding his <u>Monell</u> claim concerning the uniform policy. Arguably, defendants' motion for summary judgment as to this claim should be granted based on plaintiff's failure to oppose. Nevertheless, the undersigned addresses defendant's arguments regarding the uniform policy herein.

In support of their arguments regarding the uniform policy, defendants rely on the declaration of Tehama County Captain David Kain. Captain Kain states that on October 24, 2012, plaintiff was arrested for a charge of violating California Penal Code Section 288(a), lewd and lascivious acts with a child under 14 years of age. (ECF No. 42 at 3.) Captain Kain states, in relevant part,

> 5. As demonstrated by Exhibit 3, pursuant to questioning by jail staff during the housing classification process and a review of his criminal charges, Plaintiff was determined to be a "Special Needs Segregation" inmate because he was at risk from other inmates due to his charges. This document and Plaintiff's Booking Report indicate that he was classified as "PC1," or Protective Custody, Level 1. This classification category solely consists of persons arrested for

8

or convicted of sex-related offenses involving a child victim. PC1 inmates are never housed in the jail with inmates in any other classification category. A separate classification category, Protective Custody, Level 4 ("PC4"), is reserved for persons arrested or convicted of sex-related offenses involving an adult victim.

\*\*\*

7. Around the time of Plaintiff's booking on October 24, 2012, the jail changed its inmate uniform policy to allow our rather limited jail staff to provide more heightened protection to inmates in protective custody. Specifically, the new uniform policy required different-colored uniform shirts to be issued to inmates in different classifications. The purpose for this policy change was to enable staff to easily identify a particular inmate's classification *on sight* to prevent that inmate from coming into contact with persons in other non-compatible classifications. The policy thus provides jail staff with an additional tool to prevent inmates from passing contraband or kites (gang writings on small pieces of paper), as well as to avoid inmate assaults. This is especially important for inmates such as Plaintiff who face charges of sexually abusing children, as they are targeted by other inmates facing other types of crimes (because their crimes are considered abhorrent even to the general inmate population), and therefore at risk of violence from those other inmates.

8. Under the Sheriff's Office's new inmate uniform policy, while all inmates were issued the same type of orange uniform pants, inmates classified as PC1 were issued shirts with black and white stripes. Inmates in other classifications were issued shirts with different colored stripes. For example, inmates who were arrested or convicted of sexual offenses involving an adult victim (PC4 classification) were issues shirts in yellow and white stripes, and inmates in Administrative Segregation (ADSEG) were issued shirts with green and white stripes. Hence, because Plaintiff was properly classified as a PC1, he was required to wear orange pants and a black-and-white striped shirt.

9. To preserve the safety and security of inmates as well as staff, the Tehama County Jail has always housed inmates of the same classification in the same cell (though minor exceptions occur which are not relevant to this action). After the initiation of its new uniform policy, only inmates wearing the exact same color uniforms were permitted to reside together. In other words, only inmates classified as PC1, who were wearing black-and-white striped shirts, were permitted to reside together in the same cell. Thus, at all times Plaintiff was in the Tehama County Jail, he resided only with other inmates classified as PC1 who also had pending or had been convicted of child molestation charges.

10. Further, as demonstrated in Exhibit 5 (inmate Jakob Peterson's Release Report), inmates Jakob Peterson was at all relevant times classified as PC1 just like Plaintiff, as he also had pending charges against him for violating Penal Code Section 288(a) (lewd and lascivious acts with a child under 14), as well as Penal Code Section

9

261.5(c) (sex with a minor more than 3 years younger than the perpetrator). Also, as demonstrated on Exhibit 5, inmate Jakob Peterson was ultimately convicted of two charges under Penal Code Section 288(a). Thus, when the Sheriff's Office initiated its new uniform policy in October 2012, inmate Jakob Peterson was issued the exact same uniform as Plaintiff: orange pants and a black-and-white striped shirt.

(<u>Id.</u> at 3-6.)

The undersigned first addresses defendants' argument that the inmate uniform policy was not the "moving force" behind the physical altercation between plaintiff and inmate Peterson.

Defendants argue that plaintiff's <u>Monell</u> claim is based on his allegation that inmate Peterson assaulted him because he knew that plaintiff was charged with a sex crime involving a minor, based on the uniform plaintiff wore. Defendants argue that this claim is without merit because inmate Peterson was himself charged with a sex crime involving a minor and wore the same uniform as plaintiff. Defendants' unopposed evidence indicates that plaintiff did not co-mingle with inmates of different classifications wearing different colored uniforms. Thus, defendants argue, the uniform policy did not cause the alleged assault by inmate Peterson on plaintiff.

The undersigned finds that defendants' unopposed evidence demonstrates that the inmate uniform policy was not the moving force behind the physical altercation between plaintiff and inmate Peterson. Defendants' evidence demonstrates that both plaintiff and inmate Peterson were charged with sex crimes involving minors and wore the same uniform. Thus, plaintiff's argument that inmate Peterson attacked him because of the offenses with which he (plaintiff) was charged is without merit. Accordingly, defendants are granted summary judgment on this ground.

Defendants also argue that defendant Tehama County was not deliberately indifferent when applying the uniform policy and that plaintiff was not deprived of a constitutional right when he was required to wear the uniform. The undersigned need not reach these arguments because defendant Tehama County is entitled to summary judgment on the grounds that the inmate uniform policy was not the moving force behind plaintiff's injuries.

////

////

10

B. <u>Did Defendant Gibson Fail to Protect Plaintiff from Inmate Peterson?</u>

Defendants move for summary judgment as to defendant Gibson on the grounds that he is entitled to qualified immunity.

*Legal Standard for Qualified Immunity*

Under <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment. The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> at 201-02. Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004); <u>Saucier</u>, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is reasonable ... the officer is entitled to the immunity defense." <u>Id.</u> at 205.

*Legal Standard for Failure to Protect Claim*

The undersigned herein addresses whether plaintiff's claim against defendant Gibson should be evaluated under the Fourteenth Amendment, i.e, as a pretrial detainee, or the Eighth Amendment, i.e., as a convicted prisoner.

In the summary judgment motion, defendants argued that plaintiff's claim against defendant Gibson should be evaluated under the Eighth Amendment because, during the relevant time period, plaintiff was held in the jail not only on new charges, but also due to a revocation of his parole based on past convictions. (ECF No. 41 at 22.)

In support of this argument, defendants stated that the only documents defendant Tehama County had with respect to plaintiff's parole revocation proceedings demonstrated that plaintiff

11

was arrested on October 24, 2012, for a charge of violating California Penal Code § 288(a) (lewd and lascivious acts with a child under 14 years of age). (ECF No. 42 at 3.) Tehama County Jail had documents showing that the California Department of Corrections and Rehabilitation ("CDCR") placed a parole detainer on plaintiff and summarily revoked his parole. (Id.) These documents showed that plaintiff received a probable cause hearing regarding parole revocation on December 19, 2012, he rejected the proposed offer, and requested a full revocation hearing. (Id.) The information the Tehama County Jail received from the Board of Parole demonstrated that the full revocation hearing was never held. (Id.) Accordingly, defendants argued that at the date of the January 19, 2013 incident, plaintiff was held in the jail, in part, due to the revocation of his parole for past convictions. (Id.)

In the reply, defendants acknowledge that in the opposition, plaintiff presents documents demonstrating that Tehama County Jail may have not have been provided with accurate information with respect to the status of plaintiff's parole at the time of the January 19, 2013 incident. (ECF No. 52 at 8.) Defendants acknowledge that plaintiff provided documents demonstrating that he received a parole revocation hearing by the Board of Parole Hearings on January 3, 2013, and that revocation proceedings were dismissed that day due to lack of jurisdiction. (Id.) Defendants concede that, for purposes of the pending motion, plaintiff has provided sufficient evidence demonstrating that his parole hold had been released prior to the date of the January 19, 2013 incident, and that he was being held in the Tehama County Jail solely on new pending charges at that time.

In the reply, defendants acknowledge a split of authority as to whether a parolee who is held in jail solely on new criminal charges can invoke the protections of the Fourteenth Amendment or Eighth Amendment. See Dannebaum v. Cty. of San Diego, 2016 WL 2931114 at *2-3 (S.D. Cal. 2016) (recognizing lack of consensus as to which standard applies to a pretrial parolee detainee; holding that when the detainee is held in jail solely on new criminal charges, the Fourteenth Amendment applies). Defendants go on to argue that the Eighth Amendment should apply, rather than the Fourteenth, to plaintiff. (ECF No. 52 at 9-10.)

////

The undersigned need not decide whether the Fourteenth Amendment or Eighth Amendment applies because, under either standard, plaintiff's failure to protect claim against defendant Gibson fails. Accordingly, the undersigned herein sets forth the relevant Eighth and Fourteenth Amendment standards.

"The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other inmates." Cortez v. Skol, 776 F.3d 1046, 1050 (9th Cir. 2015). A prisoner may state a § 1983 claim under the Eighth Amendment against prison officials where the officials acted with deliberate indifference to the threat of serious harm or injury to him. Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013); see Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (stating same with respect to harm inflicted by another inmate). Liability may follow only if a prison official knows that inmates face a substantial risk of serious harm and the official disregards that risk by failing to take reasonable measures to abate it. Labatad, 714 F.3d at 1160.

In Castro v. County of Los Angeles, the Ninth Circuit announced a new, objective "deliberate indifference" standard for analyzing a pretrial detainee's "failure to protect" claim, which no longer required proof of an officer's subjective awareness of the risk to which he was exposing the detainee. Castro, 833 F.3d 1060, 1070-71 (9th Cir. 2016).

> [T]he elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are:
>
> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved —making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case.

Castro, 833 F.3d at 1071.

1     *Undisputed Facts*

2         At some time between plaintiff's arrest in October 2012 and January 18, 2013, plaintiff

3 and inmates Saetern and Peterson resided together in cell White-3.  (See ECF No. 44 at 3

4 (defendants' statement of undisputed facts, no. 13); ECF No. 49 at 8 (plaintiff's opposition).)

5         Plaintiff and inmate Saetern were moved out of cell White-3 on the same date.  (See ECF

6 No. 44 at 3 (defendants' statement of undisputed facts, no. 14); ECF No. 49 at 8-9 (plaintiff's

7 opposition).)

8         On January 18, 2013, inmate Peterson moved into cell Yellow-4, where plaintiff was

9 housed.  (See ECF No. 44 at 3 (defendants' undisputed fact no. 15); ECF No. 49 at 9 (plaintiff's

10 opposition).)

11         On January 19, 2013, plaintiff and inmate Peterson had a physical altercation.  (See ECF

12 No. 44 at 3 (defendants' undisputed fact no. 18); ECF No. 49 at 9 (plaintiff's opposition).)

13     *Analysis*

14         At the outset, the undersigned observes that the parties may dispute the dates on which

15 plaintiff and inmates Saetern and inmate Peterson were housed in cell White-3 together.

16 Defendants claim that plaintiff and inmate Peterson occupied cell White-3 for 49 days, during the

17 period November 6 to December 25, 2012.  (See ECF No. 44 at 3 (defendants' undisputed fact

18 no. 13.))  In his declaration, Captain Kain also states that inmate Saetern was housed in cell

19 White-3 from November 25 until December 25, 2012, when both plaintiff and inmate Saetern

20 were removed from cell White-3.  (ECF No. 42 at 7.)

21         In the opposition, plaintiff appears to adopt defendants' description of the timeline he and

22 inmates Saetern and Peterson were housed in Cell White-3.  (See ECF No. 49 at 8-9.)  However,

23 plaintiff also attaches to his opposition the declaration he filed in support of the amended

24 complaint, in which he claims that inmate Peterson was moved into cell White-3 during the first

25 week of January 2013.  (Id. at 62.)

26         As discussed herein, plaintiff offers no admissible evidence supporting his claim that

27 defendant Gibson had notice of any conflict between plaintiff and inmate Peterson prior to the

28 January 19, 2013 incident.  Thus, the possible dispute between the parties regarding the dates

1   when plaintiff and inmates Saetern and Peterson were housed together prior to January 19, 2013,

2   is not material.

3       Turning to the merits of defendants' motion, defendant Gibson moves for summary

4   judgment on the grounds that he did not violate plaintiff's constitutional rights because there is no

5   evidence that he knew or inferred from the facts of which he was aware that inmate Peterson

6   posed a risk of harm to plaintiff prior to the January 19, 2013 incident. In support of this

7   argument, defendants cite the following evidence. (See ECF No. 41 at 30-31.)

8       First, defendants cite a form titled "Classification and Housing/Separation Profile,

9   Tehama County Sheriff's Department" for inmate Peterson. (ECF No. 42-10 (exhibit 6.a).)

10  Defendants argue that this form shows that inmate Peterson was classified as "non-assaultive,"

11  with no incidents of violence or threats of violence in his file prior to the incident. (Id.) This

12  form, dated, October 20, 2016, states that inmate Peterson was previously housed in the Tehama

13  County Jail in 2012. (Id.) The form indicates that inmate Peterson was classified as "non-

14  assaultive," rather than assaultive. (Id.)

15      The relevance of the 2016 form classifying inmate Peterson as "non-assaultive" to the

16  January 2013 incident is not entirely clear. It is not clear how Tehama County officials

17  determined, in October 2016, that inmate Peterson was "non-assaultive." It is not clear what

18  records Tehama County officials reviewed to make this determination. For these reasons, the

19  undersigned finds that this document does not demonstrate that inmate Peterson was "non-

20  assaultive" on January 19, 2013.

21      Defendants next cite evidence demonstrating that both plaintiff and inmate Peterson were

22  both classified as PC1, and both faced the same charges for child molestation under California

23  Penal Code § 288(a). (See ECF No. 42-3 (defendants' exhibit 2); ECF No. 42-8 (defendants'

24  exhibit 5).) In essence, defendants argue that the PC1 classification shared by plaintiff and

25  inmate Peterson could not have put defendant Gibson on notice of a conflict between these

26  inmates.

27      Defendants next cite Captain Kain's declaration, where he discusses the lack of

28  information by the jail before the January 19, 2013 incident regarding any problems between

plaintiff and inmate Peterson:

> 18. Prior to the fight between plaintiff and inmate Jakob Peterson on January 19, 2013, jail staff had no information whatsoever that could have put them on notice that there was an issue between the two inmates. If an inmate provided information regarding risk of an inmate's safety, we consider it a significant safety risk and the Sheriff's Office policy requires such information to be documented on an incident report. (See Exhibit 16, section A.) The inmate subject to the risk would be immediately moved to another cell for his/her safety, and the records would document the move based on the specific safety threat. (See Exhibit 16, Section F.) I have thoroughly reviewed the relevant jail files and have determined that there was no information provided by any person that Plaintiff was at risk from an inmate assault, and none of his housing relocations were made due to a safety risk. Specifically, there are no jail staff notes, no incident reports, no grievances, no inmate request forms, no medical request slips or any other information which could have alerted jail staff to a possible conflict between Plaintiff and inmate Peterson. In addition, I have reviewed inmate Nai Ou Saetern's jail file and verify that it contains no Inmate Request Forms or any other documentation regarding Plaintiff or inmate Jakob Peterson, let alone a document raising a safety concern about either one.

(ECF No. 42 at 7-8, ¶ 18.)

Defendants also cite the following additional statement in Captain Kain's declaration: "Both Plaintiff and Jakob Peterson coexisted in White-3 and the assigned Day Room without incident or complaint from November 6 to December 25, 2012." (Id. at 6, ¶ 14.) In support of this statement, Captain Kane cites exhibits 4, 6, 7 and 8. Exhibit 4 is a form titled "Inmate Cell History/Movement Report" for plaintiff. (ECF No. 42-5 at 2.) This form states that on December 25, 2012, plaintiff was moved out of cell White-3 due to "needs of the jail" by Correctional Officer Nachand. (Id.) In his declaration, Captain Kain states that "[j]ail staff constantly adjust inmate housing decisions to balance the needs of the inmates and staff, and a move based solely on the 'needs of the jail' demonstrates that Plaintiff was not moved to Yellow-4 due to a specific threat to his safety from any other inmate." (ECF No. 42 at 7, ¶ 15.)

Exhibit 6 is an "Inmate Cell History/Movement Report" for inmate Peterson. (ECF No. 42-9 at 2.) This form states that on January 18, 2013, inmate Peterson was moved to cell Yellow-4 by Sergeant Lewis because "better suited housing." (Id.)

Exhibits 7 and 8 are forms titled "Inmate Headcount Report, Tehama County Sheriff's Department." (ECF Nos. 42-11, 42-12.) These 19 and 32 pages-long documents list inmates in

16

the jail and their classifications.  (Id.)  Without further explanation, it is not clear how these documents demonstrate the compatibility of plaintiff and inmate Peterson.

Defendants next cite the following statement from Captain Kain's declaration:

> 19.  Further, I have confirmed through a review of records and discussion with staff that Plaintiff had multiple opportunities to tell jail staff  that he did not want to be housed with inmate Peterson during the approximately 24-hours they were together in Yellow-4 before their fight, but Plaintiff never did so.

(ECF No. 42 at 8, ¶ 19.)

Captain Kain's statement regarding information he received from discussions with jail staff is hearsay.

Finally, defendants cite Sergeant Gibson's declaration.  In relevant part, Sergeant Gibson states,

> 19.  I have conducted an extensive review of the Sheriff's Office records constituting Plaintiff's jail files, including but not limited to documents relating to his booking, classification, housing, grievances, requests, and incidents while he was in the Tehama County Jail.  Based on my review of such records as well as my own personal knowledge, Plaintiff was never moved away from inmate Peterson to protect his safety and security until after the January 19, 2013 incident.  I have no personal knowledge of any threats inmate Peterson made to Plaintiff at any time prior to the January 19, 2013 incident.  I have no personal knowledge of any reason why Plaintiff and inmate Peterson should not have been housed together prior to the incident on January 19, 2013, nor do the Sheriff's records disclose any such reason.

> 20.  As a Sergeant at the jail, I take inmate-to-inmate threats of violence very seriously, as maintaining inmate safety and security is one of our primary obligations.  It is my custom and practice to immediately address any such threats to inmate safety, and I constantly review inmate housing to determine whether we can better protect inmates and staff by changing housing assignments.  Prior to the incident on January 19, 2013, I had no information available to me which indicated that I should have moved Plaintiff away from inmate Peterson to protect him from attack by inmate Peterson.  In other words, I simply did not know, nor did I have any facts from which I could have inferred, that Plaintiff faced a threat of violence from inmate Peterson prior to the incident.  Had I known that inmate Peterson posed a reasonable threat to Plaintiff's safety, I would have taken immediate action to house them separately.

(ECF No. 43 at 6-7.)

The undersigned observes that defendants do not directly address who made the decisions

1   to move plaintiff and inmate Peterson during the relevant time period.  As indicated above, the

2   movement forms reflecting the transfers of plaintiff and inmate Peterson contain the names of

3   correctional officers, and not defendant Gibson.  However, in his declaration, defendant Gibson

4   states that at the time of the January 19, 2013 incident, his duties as a Sergeant at the Tehama

5   County Jail included (among other things) making inmate housing decisions.  (ECF No. 42 at 1.)

6   Accordingly, for purposes of this summary judgment motion, the undersigned assumes that

7   defendant Gibson was responsible for authorizing plaintiff's transfer out of cell White-3 on

8   December 25, 2012, and for transferring inmate Peterson into cell Yellow-4 on January 18, 2013.

9           Based on defendants' evidence discussed above, the undersigned finds that defendants

10  have met their initial burden of demonstrating that defendant Gibson had no knowledge of any

11  threat to plaintiff from inmate Peterson before the January 19, 2013 incident.  Defendants have

12  also met their burden of demonstrating the absence of any facts from which a reasonable officer

13  would have inferred a risk of harm to plaintiff from inmate Peterson before the January 19, 2013

14  incident.  Most importantly, both defendant Gibson and Captain Kain state that there are no

15  written jail records containing information provided by another person that plaintiff was at risk

16  from assault by another inmate.  Captain Kain states that jail records reflect that plaintiff's

17  housing relocations were not made due to safety risk.  Defendant Gibson also states that he had

18  no personal knowledge of threats made by inmate Peterson to plaintiff prior to January 19, 2013.

19          The undersigned now turns to plaintiff's evidence offered in support of his claim that

20  defendant Gibson failed to protect him from inmate Peterson on January 19, 2013.

21          In the amended complaint, and opposition, plaintiff alleges that inmate Saetern filed an

22  inmate request form stating that inmate Peterson was threatening plaintiff.  (See ECF No. 10 at 9.)

23  Plaintiff attaches to his opposition the same declaration he attached to the amended complaint.

24  (ECF No. 10 at 9-11; ECF No. 49 at 62-64.)  In this declaration, plaintiff states, in relevant part,

25                  From the first day in the six (6) may cell, Peterson began threatening
                    to attack and cause great bodily harm to me (he was constantly
26                  threatening to kick my ass and saying that he was going to hurt me
                    bad or kill me).  After about four (4) days, one of the new inmates,
27                  inmate Seturn, informed Correctional Officers, by way of inmate
                    request form, of the threats to my safety by inmate Peterson.  As a
28                  result, Officer Bline moved me to another cell location.  When I ask

                                                18

Officer Bline why she was moving me she stated that an inmate had informed correctional staff that Peterson had been threatening me and that the move was for my safety and protection.

(ECF No. 49 at 62.)

In his verified opposition, plaintiff also states that on December 25, 2012, both he and inmate Saetern were moved out of the cell they shared with inmate Peterson because of the threats made by inmate Peterson and inmate Saetern's written report of the threats. (Id. at 8-9.) Plaintiff also alleges that Officer Bline must have informed her supervisor of the problem, i.e. the threats made by inmate Peterson, after receiving inmate Saetern's request form, "because someone had to make the decision to move Saeturn and myself." (Id. at 9.)

Plaintiff did not submit a copy of the request form allegedly prepared by inmate Saetern or a declaration by this inmate. While plaintiff may have observed inmate Saetern hand a request form to Officer Bline (although he does not specifically allege making this observation), plaintiff does not specifically allege how he knows what was written on the form. Therefore, plaintiff's statement regarding the contents of the form is inadmissible hearsay.

Plaintiff also failed to submit a declaration by Officer Bline regarding the form inmate Saetern allegedly gave her and why she allegedly moved plaintiff and inmate Saetern. Therefore, plaintiff's statement that Officer Bline told him that she was moving him to another cell because an inmate had informed correctional staff that inmate Peterson had threatened plaintiff is also hearsay.

In the verified opposition, plaintiff also argues that the fact that both he and inmate Saetern were moved on December 25, 2012, supports his claim that they were moved because of the form inmate Saetern submitted discussing the threats made by inmate Peterson to plaintiff. The undersigned observes that while Captain Kain states that both plaintiff and inmate Saetern were moved from cell White-3 on December 5, 2012 due to "needs of the jail," defendants did not submit a "Inmate Cell History/Movement Report" form for inmate Saetern containing this information. Nevertheless, the undersigned finds that it is not reasonable to infer from this evidence alone, i.e. that both plaintiff and inmate Saetern were transferred on the same date, that inmate Saetern made a complaint on plaintiff's behalf regarding inmate Peterson.

19

1    In support of his opposition, plaintiff has also attached an unverified declaration by

2    Gregory Prestigiacomo. (ECF No. 49 at 66-67.) In this declaration, Mr. Prestigiacomo states that

3    he was housed with plaintiff and inmate Peterson at the Tehama County Jail on January 19, 2013.

4    (Id.) Mr. Prestiagiacomo states that inmate Peterson was the aggressor during the incident

5    involving plaintiff that day. (Id.) This declaration contains no evidence regarding defendant

6    Gibson's prior knowledge of a conflict between plaintiff and inmate Peterson.

7    Defendants also argue that there is no record of plaintiff complaining to jail staff about

8    inmate Peterson after he (inmate Peterson) was moved into Yellow-4 on January 18, 2013, i.e.,

9    the day before the January 19, 2013 incident. Plaintiff does not address this issue in his

10   opposition. If plaintiff believed that inmate Peterson was a threat, then his failure to alert jail

11   officials to his concerns on January 18, 2013 is puzzling. However, the undersigned may not

12   determine the value of this evidence on summary judgment. See Anderson, 477 U.S. at 255

13   ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences

14   from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for

15   summary judgment.")

16   In sum, plaintiff has presented no admissible evidence in support of his Eighth

17   Amendment claim that defendant Gibson knew or should have known of a risk posed to him by

18   inmate Peterson prior to the January 19, 2013 incident. Plaintiff has also presented no admissible

19   evidence in support of his Fourteenth Amendment claim that a reasonable officer would have

20   appreciated the high degree of risk to plaintiff from inmate Peterson prior to the January 19, 2013

21   incident. Accordingly, because plaintiff has not met his summary judgment burden, defendant

22   Gibson is granted summary judgment.

23   Because the undersigned finds that defendant Gibson did not violate plaintiff's

24   constitutional rights, no further discussion of qualified immunity is warranted.

25   ////

26   ////

27   ////

28   ////

C.  <u>Did Plaintiff Fail to Exhaust Administrative Remedies?</u>[3]

*Legal Standard*

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under ... [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion under § 1997e(a) is "mandatory."  <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002) (citing <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001));  <u>McKinney v. Carey</u>, 311 F.3d 1198, 1200–01 (9th Cir. 2002).  Failure to exhaust is "an affirmative defense the defendant must plead and prove."  <u>Jones v. Bock</u>, 549 U.S. 199, 204 (2007).

*Evidence Regarding Plaintiff's Failure to Exhaust*

At the outset, the undersigned observes that it is undisputed that plaintiff did not file an administrative grievance regarding either of the claims raised in this action.  Plaintiff alleges that he failed to exhaust administrative remedies because defendant Gibson refused to take his statement regarding the incident and threatened to recommend criminal charges be filed against plaintiff if plaintiff pursued criminal charges against inmate Peterson.  The evidence regarding this issue is set forth herein.

In the amended complaint, plaintiff alleged that after he returned to the jail from the hospital, he told defendant Gibson that he would like to give a statement regarding the assault.  (ECF No. 10 at 11.)  Defendant Gibson refused to take plaintiff's statement.  (<u>Id.</u>)  Defendant Gibson told plaintiff that he had taken statements from other inmates who were in the cell during the attack.  (<u>Id.</u>)  Plaintiff later learned that the attack was reported as "mutual combat," and contained no statements from witnesses or plaintiff.  (<u>Id.</u>)

In the amended complaint, plaintiff also alleged that about one week after the January 19, 2013 incident, he told defendant Gibson that he wanted to file a formal complaint against inmate

<hr />

[3]  The undersigned previously denied defendants' motion to dismiss on the grounds that plaintiff failed to exhaust administrative remedies.  (ECF No. 25.)  The undersigned found that defendants' arguments were better raised in a summary judgment motion.  (<u>Id.</u>)

Peterson for the attack.  (Id. at 11.)  Defendant Gibson told plaintiff that if he filed a complaint against inmate Peterson, defendant Gibson would file felony assault charges against plaintiff for striking inmate Peterson with the food tray.  (Id.)  Plaintiff alleged that defendant Gibson told plaintiff that he would be looking at five years if convicted on those charges.  (Id.)  Plaintiff declined to file the complaint.  (Id.)

Turning to defendants' evidence, in his declaration, defendant Gibson states that after the January 19, 2013 incident, plaintiff told him that inmate Peterson had beat him up.  (ECF No. 43 at 2, ¶ 4.)  Defendant Gibson then spoke with inmate Peterson who stated that plaintiff hit him with a food tray.  (Id., ¶ 5.)  Defendant Gibson states that he then spoke with the ten other inmates in Yellow-4, i.e., Humphrey, McDowall, Tanner, Moralli, Prestigiacomo, Palmgren, Hedrick, Ramirez, Littlefield and Zaragoza.[4]  (Id., ¶ 5.)  These inmates agreed that plaintiff had been taking food, but that is all they saw.  (Id., ¶ 5.)  Defendant Gibson understood their statements to mean that plaintiff took food from inmate Peterson even though inmate Peterson wanted to eat it.  (Id., ¶ 5.)

Because both plaintiff and inmate Peterson blamed each other for the fight, and none of the inmates were willing to provide any additional information, defendant Gibson determined that the incident involved "mutual combat."  (Id. at 2, ¶ 8.)  Pursuant to jail regulations, defendant Gibson then asked both plaintiff and inmate Peterson to admit or deny their violation of Jail Rule # 2 (fighting in jail).  (Id. at 4, ¶ 10.)  Defendant Gibson advised each inmate of the consequences of admitting the action, i.e., they could be disciplined by being placed in disciplinary segregation and losing privileges.  (Id., ¶ 10.)  Both plaintiff and inmate Peterson signed acknowledgments stating that they admitted violating Jail Rule # 2.[5]  (Id., ¶ 11.)  Because plaintiff admitted

---

[4]  The undersigned observes that in his report prepared following the incident, defendant Gibson states that he spoke with the "other occupants" of Yellow-4.  (ECF No. 42-17 at 2.)  In this report, defendant Gibson does not identify the occupants by name, as he does in his declaration.

[5]  Defendants cite Exhibits 13 and 14 as containing the statements by plaintiff and inmate Peterson admitting that they violated jail rule # 2.  (ECF Nos. 42-17. 42-18.)  The undersigned can locate only the form signed by inmate Peterson admitting violating this rule.  However, plaintiff does not dispute that he signed this document.

violating Jail Rule # 2, defendant Gibson found plaintiff guilty of the rule violation. (<u>Id.</u> at 5, ¶ 13.)

Defendant Gibson states that because plaintiff and inmate Peterson's fight also constituted a criminal battery under California Penal Code § 242, he was obligated to determine whether the matter should be referred for a criminal investigation and possible prosecution by the District Attorney's Office. (<u>Id.</u> at 5, ¶ 14.) Defendant Gibson states that both plaintiff and inmate Peterson declined to press charges against each other. (<u>Id.</u>, ¶ 14.) Instead, they each signed a "Complaint Revocation" form. (<u>Id.</u>)

Regarding his conversation with plaintiff concerning the Complaint Revocation form, defendant Gibson states,

> 15. While I do not have a specific recollection of my discussions about signing the "Complaint Revocation" forms with either plaintiff or inmate Peterson, my usual custom and practice would have been to separately ask them whether they wanted to press charges against the other. If they wanted to press charges, I would refer the complaint to Sheriff's Office investigations, which would conduct the investigation thereafter (I would not have been involved in the investigation). In other words, if plaintiff had wanted to have the incident investigated further, all he needed to do was to agree to press charges and I would have conducted a criminal investigation. Moreover, I do have the ability to refer the matter for criminal investigation without obtaining the consent of the involved parties, but I did not refer this incident for criminal investigation because there was no evidence I could find which indicated that one of them was the aggressor over the other one, and both declined to press charges.
>
> 16. When discussing with inmates whether they want to press charges against other persons in the jail, it is my custom and practice not to speculate or provide information on possible sentences that could result from a conviction. Hence, I would not have told plaintiff that if he wanted to press charges against inmate Peterson he could also face his own charges resulting in any specific amount of prison time.
>
> ***
>
> 18. To the best of my recollection, I did not speak with Plaintiff about his filing an administrative grievance or internal jail complaint regarding the fight with inmate Peterson, and I never would have told him that he faced criminal prosecution if he did so. I do not recall having any conversations with plaintiff regarding whether or not he should submit an administrative grievance on any type of matter, such as the inmate uniform policy, plaintiff's housing with inmate Peterson, or the fighting incident. The only conversations I ever

23

> recall having with him were on the issue of whether he wanted to file a criminal complaint against inmate Peterson to allow a criminal investigation to proceed, for the purposes of possibly prosecuting inmate Peterson for the alleged attack.

(Id. at 5-6.)

Based on the allegations in the amended complaint and defendant Gibson's declaration, the undersigned finds that whether defendant Gibson threatened to pursue criminal charges against plaintiff if plaintiff pursued criminal charges against inmate Peterson is a disputed fact.

The extent of defendant Gibson's investigation of the incident is also disputed. Plaintiff alleges that defendant Gibson did not take his statement after the incident. Defendant Gibson alleges that he spoke with plaintiff, inmate Peterson and the other inmates in Yellow-4.

While plaintiff disputes defendant Gibson's claim that he interviewed the other inmates in Yellow-4 regarding the incident, plaintiff has submitted no admissible evidence in support of this claim. Plaintiff's claim that he, himself, later found out that defendant Gibson did not conduct an investigation, is hearsay. While Mr. Prestigiacomo states in his letter attached to the opposition that "nobody was questioned in Yellow 4 about the fight," inmate Prestigiacomo's statement is unsworn. (ECF No. 49 at 66-67.) Accordingly, the undersigned may not consider this statement. See 28 U.S.C. § 1746.

*Analysis*

A grievance process may be rendered unavailable "when prison administrators thwart inmates from taking advantage of a grievances process through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S.Ct. 1850, 1860 (2016). In McBride v. Lopez, 807 F.3d 982 (9th Cir. 2015), the Ninth Circuit held that a threat of retaliatory action by a prison official would render a prison grievance system unavailable so as to excuse a prisoner's failure to exhaust administrative remedies if the following conditions are met:

> 1.  The threat of retaliation actually did deter the plaintiff from lodging a grievance or pursuing a particular part of the process; and

> 2.  The threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

24

<u>Id.</u>

Defendant Gibson's alleged refusal to take plaintiff's statement following the incident, combined with his alleged threat to pursue criminal charges against plaintiff if plaintiff pursued a criminal complaint against inmate Peterson, could have deterred a reasonable inmate of ordinary firmness and fortitude from filing a grievance raising the claims raised in the instant action regarding the January 19, 2013 incident. Defendant's actions could have led a reasonable inmate to believe that he would face further retaliation if he made additional complaints regarding the January 19, 2013 incident, including the filing of a grievance. However, an evidentiary hearing would be required to make a final determination regarding the merits of plaintiff's claims regarding the alleged threats.

Defendants make four arguments in opposition to the finding that summary judgment cannot be found without an evidentiary hearing. The undersigned addresses these arguments herein.

First, defendants argue that whether or not defendant Gibson dissuaded plaintiff from filing a grievance against inmate Peterson is not relevant to plaintiff's ability to exhaust administrative grievances regarding the claims raised in this action, i.e., the uniform policy and defendant Gibson's alleged failure to protect plaintiff from inmate Peterson. As clarified in the pending summary judgment proceedings, plaintiff is claiming that defendant Gibson threatened to pursue criminal charges against plaintiff if plaintiff pursued criminal charges against inmate Peterson. As discussed above, defendant Gibson's alleged failure to take plaintiff's statement and threat to retaliate against plaintiff for pursuing criminal charges against inmate Peterson could reasonably be interpreted as a willingness by defendant Gibson to retaliate against plaintiff for pursuing any type of complaint related to the incident, including an administrative grievance alleging that defendant Gibson caused the attack.

Defendants also argue that because the facts show that plaintiff felt free to complain about the uniform policy, it is not reasonable to believe that plaintiff believed he would be retaliated against for filing an administrative grievance regarding the uniform policy. In support of this argument, defendants cite paragraph 11 of Captain Kain's declaration:

25

11. Plaintiff spoke with me several times about the uniform policy, as he complained about wearing a uniform which he believed drew attention to him and identified him as a PC1 inmate. However, plaintiff never told me that he thought the uniform put him at risk of injury from inmate Jakob Peterson. In response to plaintiff's verbal complaint, I told him that the distinctive uniforms were intended to allow staff to protect him better, if it lessened the possibility that staff would make a mistake by allowing him to comingle with General Population inmates. Plaintiff did not follow-up his verbal complaints in writing.

(ECF No. 42 at 5-6, ¶ 11.)

Captain Kain does not state when plaintiff made the verbal complaints regarding the uniform policy. In any event, plaintiff's ability to make verbal complaints regarding the uniform policy goes to plaintiff's credibility, which may not be decided on summary judgment. See Williams v. Gore, 2017 WL 1354695 at *7 (S.D.Cal. 2017) (citing Coleman v. Brown, 938 F.Supp.2d 955, 961-62 (E.D. Cal. 2013) (resolving credibility determinations are normally accomplished through an evidentiary hearing).)

Defendants next argue that plaintiff's failure to complain to jail staff about being housed with inmate Peterson during the time they were housed together in White-3 and Yellow-4 undermine any claim by plaintiff that he was deterred from filing a grievance against defendant Gibson. Defendants argue that if plaintiff were truly at risk, he would have submitted a request form or grievance during the time he was housed with inmate Peterson. Plaintiff's failure to complain about inmate Peterson prior to January 19, 2013 also goes to plaintiff's credibility, which may not be decided on summary judgment. Williams v. Gore, supra.

For the reasons discussed above, the undersigned finds that defendants are not entitled to summary judgment on the grounds that plaintiff failed to exhaust administrative remedies. An evidentiary hearing would be required to resolve the issue of administrative exhaustion. However, because defendants are entitled to summary judgment on the merits of plaintiff's claims, the issue of administrative exhaustion need not be resolved.

////

////

////

1          Accordingly, IT IS HEREBY ORDERED that:

2          1.  Defendants' motion for an extension of time to file a reply (ECF No. 50) is granted;

3   and

4          2.  Defendants' motion for summary judgment (ECF No. 41) is granted.

5   Dated:  June 29, 2018

6

7                                                    _____
                                                     KENDALL J. NEWMAN
8   Sm545.sj                                         UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        27